UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| KAMONA  MCDOWELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:14-cv-00479-SEB-TAB |
| | ) | |
| INDIANAPOLIS PUBLIC SCHOOLS, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

This matter comes before us on Defendant Indianapolis Public Schools's Motion for Partial Summary Judgment.  [Dkt. No. 27.]  The motion is fully briefed.  [*See* Dkt. Nos. 40, 43.]  For the following reasons, we GRANT Defendant's Motion as to Counts I, II, IV, V, and VI of Plaintiff's Amended Complaint and REMAND to state court Plaintiff's state law claim for Breach of Contract (Count III).

**Background and Facts**

The facts are largely undisputed.  [*See* Dkt. No. 40 at 2-3 (Plaintiff's Response Brief wherein her "Statement of Material Facts in Dispute" merely highlights the pertinent questions of law at issue).]  Kamona McDowell was first hired by Indianapolis Public Schools ("IPS") in November 2001 as a classroom teacher.  [Deposition of Kamona McDowell ("McDowell Dep.") at 16, 17.]  Her renewable teaching contract was formally executed in January, despite the school year having actually started during the year prior.

[*Id.* at 19.]   Ms. McDowell's teaching contract was renewed every year thereafter for twelve years.  [*Id.* at 20.]

In 2002, Ms. McDowell was offered the position of Assistant Principal at School #99.  [*Id.* at 21; *see id.* at Exs. A and B (Ms. McDowell's assistant principal contracts).] Four years later, Ms. McDowell was promoted to Principal of IPS School #43 in 2006. [Dkt. No. 29-2 (Pltf. Interrog. Resp. at Nos. 1, 7, 8).]  Each year Ms. McDowell was an administrator she entered into a contract ending on July 1 of the respective year. [McDowell Dep. at 23.]

During her term as Principal at School #43, Ms. McDowell was reprimanded by IPS and counseled on ways to improve her performance.  [Dkt. No. 29-2 (Pltf. Interrog Resp. at No. 8(g)).]  Specifically, in 2008, IPS reprimanded Ms. McDowell for asking her staff to support her daughter's mission trip to Africa.  [*Id.*; McDowell Dep. at 50-51, 76-78.]  At some point during that year, Ms. McDowell was placed on a "Performance Improvement Plan" in an effort to improve her "interpersonal relationships" with her staff at School #43. [Pltf. Interrog. Resp. at 8(g); McDowell Dep. at 55-56.]  The Performance Improvement Plan ended in 2009.  However, on at least three occasions, IPS also documented errors in Ms. McDowell's accounting methods relating to School #43's finances.  [Pltf. Interrog. Resp. at 8(g); McDowell Dep. at 55-56.]

Ms. McDowell's most recent administrator contract with IPS governed her employment for the school year beginning June 30, 2012 and ending before July 1, 2013. On December 12, 2012, IPS notified Ms. McDowell that it was considering not renewing her administrator contract.  [McDowell Dep. at 25, Ex. F.]  By letter dated January 23,

2

2013, IPS informed Ms. McDowell that her contract would not be renewed for the 2013/2014 school year.  [*Id.* at 28, Ex. G.]  Ms. McDowell contends that the letter she received was the same form letter as that is sent out to all administrators each year.  [*Id.* at 28.]  According to Ms. McDowell, it was standard practice for IPS to notify administrators before January 1 if their contracts would *not* be renewed; if an administrator did not receive notice of non-renewal, her position was secure for the upcoming school year.  [*Id.* at 26.]  Ms. McDowell testified that upon receipt of a notice of termination administrators are given the option to speak to the Superintendent to get a better understanding of the meaning and purpose of the letter.  [*Id.* at 29.]  Ms. McDowell said she was not concerned when she received the January 23, 2013 letter because then-Superintendent, Dr. White, had indicated that he had no concerns regarding her continued employment, particularly in light of her positive evaluations over the past 8-10 years.  [*Id.* at 31.]  Two months after receiving her non-renewal notice, consistent with Ms. McDowell's conversations with Dr. White, IPS sent Ms. McDowell a letter on March 14, 2013, indicating that the IPS Board of School Commissioners ("School Board") had "reinstated" her administrator's contract for the term running from July 1, 2013 through July 30, 2014 and that she would be notified of her exact placement as soon as possible.  [*Id.* at 23-24, Ex. C.]

Before the 2013/2014 school year commenced, however, IPS completed an audit of the financial records at School #43 that revealed numerous accounting irregularities, some of which IPS had previously counseled Ms. McDowell to avoid and/or correct.  [Pltf. Interrog. Resp. at 8(g); McDowell Dep. at 84-87.]  Reversing its renewal decision, on April 29, 2013, IPS suspended Ms. McDowell pending further investigation of the accounting

mistakes to determine if those mistakes violated IPS's policies.  [Pltf. Interrog. Resp. at 8(g); McDowell Dep. at 74.]  Ms. McDowell met with HR Chief Jane Kendrick on two occasions to present evidence relating to the alleged accounting anomalies.  [Dkt. No. 40 at 3 (citing Pltf. Interrog. Resp. No. 16).]

In July 2013, after the 2012/2013 school year ended, Ms. McDowell met with the Executive Director of Elementary Education, Joan Harrell.  Ms. Harrell informed Ms. McDowell that she intended to recommend to the School Board that Ms. McDowell not be retained as Principal of School #43.  [McDowell Dep. at 32-33; Dkt. No. 40 at 3.][1]  In response, Ms. McDowell requested a conference with the Superintendent [McDowell Dep. at 33], which request was granted.

On July 23, 2013, a meeting lasting 30- to 40-minutes occurred during which Ms. McDowell, her attorney, the acting Superintendent, the Director of Elementary Education, and others discussed Ms. Harrell's recommendation that Ms. McDowell's administrative contract be canceled due to Ms. McDowell's continued mismanagement of her building's extracurricular accounts.  [*Id.* at 32-33.]  Evidence was presented, concerns were aired, and Ms. McDowell presented a defense which included *inter alia* an assertion that various school secretaries were the ones responsible for the accounting irregularities.  [*Id.* at 33-34, 45; *see also* Pltf. Interrog. Resp. No. 16 ("I was able to present my evidence and

---

[1] Both parties refer to a July 15, 2013 communication from Ms. Harrell to Ms. McDowell.  Ms. McDowell also testified that she "noted at the bottom [of that letter] that she requested a conference with the Superintendent."  [*See* Dkt. No. 40 at 8.]  Neither party supplied us with a copy of the July 15, 2013 letter.

case.").]    At the conclusion of the meeting, Dr. Peggy Hinckley (then Acting Superintendent) stated that she would recommend to the Board the cancellation of Ms. McDowell's administrator contract.  [McDowell Dep. at 33.]  On August 7, 2013, in a special meeting, the IPS School Board "voted to cancel" Ms. McDowell's administrator contract and to transfer her to a teaching position (the "adverse employment action").  [*Id.* at 31, Ex. H.]  This decision was confirmed in an August 9, 2013 letter from Dr. Hinckley to Ms. McDowell.  [McDowell Dep. at Ex. H.]  Two months later, by letter dated October 7, 2013, Ms. McDowell requested a conference with the School Board; no response to that request was received.

## Standard of Review

Summary judgment is appropriate when the record shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  In deciding whether genuine issues of material fact exist, the Court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party.  *Id*. at 255.  However, neither the "mere existence of some alleged factual dispute between the parties,"  *Id*., at 247, nor the existence of "some metaphysical doubt as to the material facts," (*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)) will

defeat a motion for summary judgment. *Michas v. Health Cost Controls of Ill., Inc.,* 209 F.3d 687, 692 (7th Cir. 2000).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323. The party seeking summary judgment on a claim on which the non-moving party bears the burden of proof at trial may discharge its burden by showing an absence of evidence to support the non-moving party's case. *Id*. at 325; *Doe v. R.R. Donnelley & Sons, Co.,* 42 F.3d 439, 443 (7th Cir. 1994). Summary judgment is not a substitute for a trial on the merits, nor is it a vehicle for resolving factual disputes. *Waldridge v. Am. Hoechst Corp.,* 24 F.3d 918, 920 (7th Cir. 1994). But, if it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish his or her case, summary judgment is not only appropriate, but mandated. *Celotex,* 477 U.S. at 322*; Ziliak v. AstraZeneca LP,* 324 F.3d 518, 520 (7th Cir. 2003). Further, a failure to prove one essential element "necessarily renders all other facts immaterial." *Celotex,* 477 U.S. at 323.

## Legal Analysis[2]

**A.    Count I – Procedural Due Process Pursuant to 42 U.S.C. § 1983.**

Plaintiff's first claim is based on a violation of her due process rights.  To obtain

relief in an action brought under 42 U.S.C. § 1983, Plaintiff must show she "was deprived

of a right secured by the Constitution or federal law, by a person acting under color of law."

*Parker v. Franklin County Cmty. Sch. Corp.*, 667 F.3d 910, 925 (7th Cir. 2012).  The parties

assume for purposes of this motion for summary judgment that the IPS officials were acting

under color of state law.  Where, as here, the § 1983 action is predicated on a denial of

---

[2] Ms. McDowell has withdrawn several of her claims.  Specifically, she withdrew her claim pursuant to 42 U.S.C. § 1981 (Am. Compl. at Count II) and also her claim pursuant to 42 U.S.C. § 2000e for race, gender, and/or religious discrimination (*id.* at Count IV).  [Dkt. No. 40 at 23-24.] Ms. McDowell states in her response brief that she "hereby withdraws her claim pursuant to 42 U.S.C. § 1981 in its own right, but preserves her claim under 42 U.S.C. § 1983 for Defendant's violation of Plaintiff's contractual rights guaranteed by 42 U.S.C. § 1981." [Dkt. No. 40 at 23.] However, Ms. McDowell has not alleged a § 1983 claim based on a violation of § 1981 [*see* Am. Compl.] and is not permitted to amend her Complaint in response to a motion for summary judgment.  *Anderson v. Donahoe*, 699 F.3d 989, 997 (7th Cir. 2012) ("[A] plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment.") (citation and internal quotation marks omitted).  As a result, we GRANT IPS's Motion for Summary Judgment as to Counts II and IV of Plaintiff's Amended Complaint.

The preferred practice, given the voluntary relinquishment of these claims, would be for Plaintiff's counsel to move to dismiss Counts II and IV of the Amended Complaint *before* Defendant filed its summary judgment motion.  Plaintiff's counsel is reminded that 28 U.S.C. § 1927 imposes "a continuing duty upon attorneys to dismiss claims that are no longer viable." *Jolly Group, Ltd. v. Medline Indus., Inc.*, 435 F.3d 717, 720 (7th Cir. 2006); 28 U.S.C. § 1927 ("Any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.").  Section 1927 requires more than counsel's statement that Plaintiff "withdraws" certain claims in response to a motion for summary judgment. Plaintiff's counsel has an affirmative duty to dismiss those claims prior to the filing of such a motion, rather than forcing Defendant to incur the cost and burden of filing the motion.  Plaintiff's counsel has failed to satisfy her responsibility to withdraw what are clearly futile or non-viable claims.

procedural due process, plaintiff must prove that she was deprived of a protected interest by Defendant without constitutionally adequate process. *Barrows v. Wiley*, 478 F.3d 776, 780 (7th Cir. 2007). A § 1983 procedural due process claim contains three essential elements: proof of "(1) a cognizable property interest; (2) a deprivation of that property interest; and (3) a denial of due process." *Khan v. Bland*, 630 F.3d 519, 527 (7th Cir. 2010).

### 1. Cognizable Property Interest and Deprivation of that Interest.

Ms. McDowell claims that she was denied her due process right to a private conference with the School Board prior to IPS's termination of her employment as an administrator for the 2013/2014 school year. Ms. McDowell argues that her 2013/2014 administrative employment was a cognizable property right and prior to the termination of that employment, she was entitled to a private conference with the School Board based on the contract cancelation procedures found in Indiana Code § 20-28-7.5-2 and -3.

To establish that she was denied due process, Ms. McDowell first must demonstrate that her 2013/2014 administrative employment was a "property interest of constitutional magnitude." In situations where the state's discretion regarding revocation of a right or an interest is clearly limited, she cannot be denied that property interest unless specific conditions are met. *See Brown v. City of Michigan City, Ind.*, 462 F.3d 720, 729 (7th Cir. 2006) (citation omitted); *see Cornelius v. LaCroix*, 838 F.2d 207, 210 (7th Cir. 1988) ("People have a legitimate claim of entitlement to keep that which presently securely belongs to them. Where state law gives people a benefit and creates a system of nondiscretionary rules governing revocation or renewal of that benefit, the recipients have a secure and durable property right, a legitimate claim of entitlement."). A person's interest

8

in a benefit, such as continued employment, constitutes "property" for due process purposes if "there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit." *Covell v. Menkis*, 595 F.3d 673, 675 (7th Cir. 2010) (quoting *Border v. City of Crystal Lake*, 75 F.3d 270, 273 (7th Cir. 1996)).  To be successful on her § 1983 claim, Ms. McDowell must prove that IPS had limited discretion to deny her continued administrative employment.

Ms. McDowell's 2012/2013 Administrator Contract (which followed Indiana Code § 20-28-6-3's prescribed form) set forth that the contract may only be canceled during its term through the procedures in Indiana Code § 20-28-7.5-2, and -3.  Those sections establish that upon a timely request, the administrator will be provided an initial private conference with the superintendent and an additional private conference with the governing body (the School Board).  Ms. McDowell argues that IPS's March 14, 2013 letter constituted an administrative employment agreement for the 2013/2014 school year which incorporated these statutory rights and limited IPS's discretion to terminate her 2013/2014 administrative employment.   IPS does not dispute that Indiana's prescribed teacher/administrator contract creates a cognizable property right – only that Ms. McDowell had no such contract for the 2013/2014 school year.

The analysis here is challenging because Ms. McDowell did not have an Indiana-law-prescribed written 2013/2014 administrator contract, and IPS's communications to Ms. McDowell about her 2013/2014 administrative employment reflect a series of fits and starts agreements, as recounted below:

- 10/30/12:  IPS and Ms. McDowell entered into an Administrator Contract for the school term beginning after June 30, 2012 and ending before July 1, 2013.

- 12/12/12:  IPS sent a letter to Ms. McDowell notifying her that the School Board "is considering a decision not to renew [her] contract as administrator for the next school term."

- 1/23/13:  IPS sent a letter to Ms. McDowell notifying her that the School Board "has determined not to renew [her] contract as an Administrator for the next school year."

- 3/14/13:  IPS sent a letter to Ms. McDowell notifying her that her "administrator's contract with the Indianapolis Public Schools was reinstated by the [School Board] last evening" with a term of July 1, 2013 through June 30, 2014.

- 8/9/13:  IPS sent a letter to Ms. McDowell notifying her that the School Board "voted to cancel [her] Administrator's contract."

[McDowell Dep. at Exs. C, F, G, H; Dkt. No. 41-4.]

In navigating these conflicting communications, IPS argues that Ms. McDowell had no Administrator Contract as of August 2013, when the adverse employment action occurred against her.  IPS's contention is based on two factual assertions.  First, when the adverse employment action occurred, Ms. McDowell had no written administrator contract for 2013/2014 school year and her 2012/2013 Administrator Contract's term had expired. Second, Ms. McDowell's 2012/2013 Administrator Contract was not renewed because IPS gave notice on January 23, 2013 that her Administrator's Contract would not be renewed. [*See* Dkt. No. 43 at 4 (citing Ind. Code § 20-28-8-3).]  IPS maintains that because it provided notice of nonrenewal of her contract to Ms. McDowell in January, no administrator contract existed which allowed it to "demote" Ms. McDowell on August 7, 2013 without providing other due process protections.  In making this argument, IPS minimizes the significance of its March 14, 2013 letter informing Ms. McDowell that her

10

administrator contract had been reinstated.  [Dkt. No. 28 at 9-10 (Although "[i]t is true that IPS also sent a letter to Ms. McDowell in March 2013 which said her contract would be renewed the following school year . . . the fact remains that IPS followed the letter of law with respect to nonrenewal of principal contracts.").]  Similarly, the August 9, 2013 letter from IPS that purported to "cancel" her administrator contract has gone unaddressed by IPS.[3]

Ms. McDowell concludes, albeit without citing any controlling legal authority, that the March 14, 2013 letter "effectively created a new contract as existed under the previous administrator contracts."  [Dkt. No. 40 at 20.]  In support, she recounts her ten-year history of receiving similar nonrenewal/reinstatement letters followed by nearly identical administrator contracts that were not executed until well after the applicable school year started.  [Dkt. No. 41-5 (2012/2013 Administrator Contract executed Oct. 30, 2012) (2011/2012 Administrator Contract dated Jan. 2012) (2009/2010 Administrator Contract executed Feb. 16, 2010) (2008/2009 Administrator Contract executed Nov. 21, 2008).]

---

[3] In an effort to rebut Ms. McDowell's claim of a cognizable property interest protected by due process, IPS relies on a 1984 case from our court, *Warfield v. Adams*, 582 F. Supp. 111 (S.D. Ind. 1984), which considered another IPS decision not to renew a plaintiff's principal contract and to reassign her to a teaching position, which action by the school the Court let stand.  *Id.* at 114. Ms. McDowell distinguishes *Warfield* on the basis that plaintiff in that case was given a hearing before the entire Board, whereas she was not.  This may be true, but there is a more compelling distinction between the *Warfield* case and Ms. McDowell's:  the plaintiff in *Warfield* was reassigned from her administrative position and her contract not renewed.  IPS mischaracterizes the adverse employment action here when it describes the action in terms of reassigning Ms. McDowell and not renewing her administrator contract.  That description is not borne out in IPS's own communications to Ms. McDowell.  Here, IPS "reinstated" Ms. McDowell's administrative contract in March and then "canceled" that contract in August.  Those facts make *Warfield* inapposite here.

This pattern, according to Ms. McDowell, sufficed to create a cognizable property interest in her administrative employment for the 2013/2014 school year.

We agree.   On behalf of the School Board, in March, 2013, IPS's Interim Superintendent communicated to Ms. McDowell the following:

> It is my pleasure to inform you that your administrator's contract with the Indianapolis Public Schools was reinstated by the Board of School Commissioners last evening.  The term of your contract will run from July 1, 2013 through June 30, 2014.  Your actual administrative assignment for next year is still under consideration but you will be notified of your exact placement as soon as possible.  I am looking forward to working with you as we effectively conclude this semester and prepare for a successful launch of the 2013-2014 school year.

[McDowell Dep. at Ex. C (March 14, 2013 letter).]   This letter, stating that Ms. McDowell's administrator contract was "reinstated," coupled with the parties' history of agreeing to administrative employment and following up months later with a written contract, unequivocally evidences a mutually explicit understanding between IPS and Ms. McDowell that the terms of Ms. McDowell's 2012/2013 Administrator Contract were in place for the 2013/2014 school year.  Moreover, that IPS's August 9, 2013 letter purported to "cancel" Ms. McDowell's administrative contract supports a conclusion that the parties mutually understood that a 2013/2014 administrative contract was in place at the time of the adverse employment action.  This is enough to establish a cognizable property interest for which Ms. McDowell was entitled to due process protections.  IPS's March 14, 2013 letter transformed any "mere unilateral expectation" of 2013/2014 administrative employment into a legitimate claim of entitlement to the benefit of continued administrative employment.

12

2.      **Denial of Due Process.**

While she possessed due process rights, as we explained above, the undisputed material facts demonstrate that Ms. McDowell received all the rights and protections to which she was entitled prior to and in connection with her adverse employment action.  Ms. McDowell does not contend that she received no pre-termination conference or that the initial private conference with the Superintendent was insufficient; rather, she bases her due process claim solely on the fact that she did not "receive her pre-termination hearing before the School Board in violation of [her Principal/Administrator's] contract." [Amended Compl. at ¶¶ 6-7.]

The undisputed evidence demonstrates that Ms. McDowell was accorded procedural due process with regard to the termination of her administrator's contract pursuant to the terms of her 2012/2013 Administrator Contract (which Ms. McDowell contends the March 14, 2013 letter incorporated into her purported 2013/2014 contract).  The administrator contract prescribed by the state superintendent adopts the procedural requirements contained in Indiana Code § 20-28-7.5-2 and § 20-28-7.5-3.  *See* Ind. Code § 20-28-6-3 (requiring the state superintendent to prescribe regular teacher's contract forms). Ms. McDowell contends that, pursuant to those provisions of the Indiana Code, she was entitled to a meeting with the School Board prior to a final decision regarding her Administrator Contract.  Section 20-28-7.5-2(f) provides:

> (f) For items listed in section (1)(e)(3), (1)(e)(4), or (1)(e)(6) of this chapter, *if the teacher files a request with the governing body for an additional private conference not later than five (5) days after the initial private conference with the superintendent, the teacher is entitled to an additional private conference with the governing body before the governing body makes a final*

*decision,* which must be in writing, concerning the cancellation of the teacher's contract.

(g) For items listed in section (1)(e)(1), (1)(e)(2), (1)(e)(5), or (1)(e)(7) of this chapter, *if, not later than five (5) days after the initial private conference with the superintendent, the teacher files a request with the governing body for an additional private conference, the teacher is entitled to an additional private conference with the governing body before the governing body makes a final decision.* The final decision must be in writing and must be made not more than thirty (30) days after the governing body receives the teacher's request for the additional private conference. At the private conference the governing body shall do the following:

> (1) Allow the teacher to present evidence to refute the reason or reasons for contract cancellation and supporting evidence provided by the school corporation. Any evidence presented at the private conference must have been exchanged by the parties at least seven (7) days before the private conference.

> (2) Consider whether a preponderance of the evidence supports the cancellation of the teacher's contract.

Ind. Code § 20-28-7.5-2(f) (2011) (emphasis added).[4]

Ms. McDowell alleges that "[a]fter meeting with the Superintendent in the initial private conference, [she] made a request within five days for an additional private conference with the governing body, the Board of Commissioners" [Dkt. No. 40 at 22 (citing "Exhibit 6")], citing her October 7, 2013 letter to the School Board as evidence of her request with the governing body for an additional private conference. [Dkt. No. 41-6.] This request to the School Board for an additional private conference (Plaintiff's Exhibit 6) was made more than two months after her initial private conference with the

---

[4] Indiana Code § 20-28-7.5-2 regulating cancellation of teacher and principal contracts was amended in 2015. *Compare* Ind. Code § 20-28-7.5-2 (2015) *with id.* (2011).

Superintendent – clearly not within five days, as Ms. McDowell represents.  Exhibit 6 states as follows:

> On July 23, 2013, I had a conference with Peggy Hinckley, the Interim Superintendent, and their attorney. . . .
>
> I received a letter dated August 5, 2013 advising that Peggy Hinckley was recommending that the Board of School Commissioners vote, in a special called meeting, which I was not allowed to attend, on August 7, 2013, to cancel my administrator's contract.  Subsequently, I received a letter dated August 9, 2013 that the Board voted to cancel my administrator's contract.

[*Id.*]

We fail to grasp Plaintiff's assertion that her request to the School Board conformed to the time requirements of Ind. Code § 20-28-7.5-2(f).  She has provided no explanation of when, where, or how she filed her request to the School Board for an additional private conference.  Ms. McDowell references in her opposition brief communications with various IPS employees regarding an opportunity to meet with the IPS School Board, but points to her October 7, 2013 letter as her only request for a private conference with the

School Board.[5]  Based on the evidence before us, it is clear that Ms. McDowell did not

make a timely request for a conference with the School Board consistent with the

requirements of the Indiana Code, which is the same provision she now maintains entitled

her to a meeting with the School Board.[6]  IPS did not deny Ms. McDowell a hearing before

the School Board, because Ms. McDowell never requested one.

The undisputed material facts demonstrate that Ms. McDowell received all the due

process to which she was entitled under Ind. Code § 20-28-7.5-2:  she received a private

meeting with the Superintendent during which she was allowed to present evidence and

---

[5] Ms. McDowell stated in her Interrogatory responses:  "During this [July, 2013] meeting, I asked both Joan Harrell [Executive Director of Elementary Education] and Edwina Suit [HR Chief] if I [could] meet with the IPS Interim Superintendent and the IPS Board, to present my case. I was told by Joan, 'No, there will be no meeting.  I will make my recommendation to the Superintendent and she will make a recommendation to the Board.'"  [Dkt. No. 40 at 3-4.]  Ms. McDowell also claims that during her July 23, 2013 hearing with the Interim Superintendent Peggy Hinckley she asked if she would "be able to present before the IPS School Board" and was told by Dr. Hinckley, "[n]o, I will make my recommendation to the Board and they will make the final decision."  [*Id.* at 4.]  In her October 7, 2013 letter to the IPS School Board Ms. McDowell claims that during her July 23, 2013 private conference, she was "advised that a decision would be made as to whether to recommend cancellation of my administrative contract and that [she] did not have a right to a conference with the Board because there ha[d] been no recommendation to cancel [her] underlying 'teacher's contract'."  [Dkt. No. 41-6.]  Ms. McDowell was represented by counsel at this private conference.  She does not contend that she relied on these statements to her detriment nor does she argue that her communications to Ms. Harrell, Ms. Suit, or Dr. Hinckley satisfy Indiana Code § 20-28-7.5-2(f) or (g)'s requirements that she "file[] a request with the governing body for an additional private conference not later than five (5) days after the initial private conference with the superintendent."

[6] Although Plaintiff has not disputed any of the facts set forth by IPS, she states that "[a]t an absolute minimum, a material dispute of fact exists with regard to whether Plaintiff's procedural due process rights were violated by failing to provide her with a pre-termination hearing before the school board."  [Dkt. No. 40 at 22.]  Plaintiff's assertion lacks any legal or factual support and thus is not well-taken.  *See Lemere-Jackson v. Colvin*, Cause No. 3:13-cv-911- CAN, 2014 WL 4656567 (N.D. Ind. Sept. 17, 2014); *U.S. v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("A skeletal 'argument', really nothing more than an assertion, does not preserve a claim.")).

16

argument with the assistance of her counsel.  Ms. McDowell's failure to timely request a meeting with the School Board effectively precluded any further procedural rights she might otherwise have had.  To the extent Ms. McDowell had the opportunity to pursue her rights, she was given all she was due.  For the foregoing reasons, we GRANT IPS's motion for summary judgment on Plaintiff's § 1983 claim.

## B.    ADEA Claim.

Under the Age Discrimination in Employment Act ("ADEA"), an employer may not "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1).  An employee must be at least 40 years of age to pursue an age discrimination claim, which requirement is satisfied here.  29 U.S.C. § 631(a).  A plaintiff "can survive summary judgment under either the direct or indirect method" of proof.  *Fleishman v. Cont'l Cas. Co.*, 698 F.3d 598, 603 (7th Cir. 2012).  Here, Plaintiff seeks to prove an ADEA violation under the indirect method of proof.  [*See* Dkt. No. 40 at 24-26.]

To make out a *prima facie* case of age discrimination through the indirect method, Ms. McDowell must demonstrate that (1) she was meeting the legitimate expectations of her employer; (2) she was subjected to an adverse employment action; and (3) "similarly situated, substantially younger employees were treated more favorably."  *Id.* at 609.  The burden shifts back to plaintiff if defendant introduces a "legitimate, nondiscriminatory reason for" the adverse employment action.  *Widmar*, 772 F.3d at 463.  At that point, the plaintiff must demonstrate that defendant's stated reason for the adverse employment action was pretextual.

### 1.    Plaintiff's *Prima Facie* Claim of Age Discrimination.

Ms. McDowell's argument in support of her ADEA claim lacks an analysis as to each of the required elements of an ADEA claim.  With respect to the first element – that she was meeting the legitimate expectations of her employer – Ms. McDowell relies entirely on her own affidavit, stating "[m]y evaluations show that I was meeting my administrative expectations; scoring in the 'Exceeding' level."  [McDowell Aff. at ¶ 15.] Ms. McDowell has not submitted any of these evaluations to the Court, nor has she informed us as to the effective dates of these evaluations.  IPS refutes Ms. McDowell's self-serving statements by pointing to "many reasons for being dissatisfied with McDowell's performance as a principal" [Dkt. No. 28 at 19], referencing her own admitted performance deficiencies, as follows:

> McDowell herself admits to no fewer than five instances in which she was either reprimanded by IPS or counseled in ways to improve her performance. (Plaintiff's Answer to Defendant's Interrogatory No. 8(g).)  In 2008, IPS reprimanded her for asking her staff to support her daughter's mission trip to Africa.  (*Id.*; McDowell's Deposition, pp. 50-51, 76-78).  At some point she was also "placed on a 'Performance Improvement Plan' to improve interpersonal relationships" with staff at her school.  (Plaintiff's Answer to Defendant's Interrogatory No. 8(g); McDowell's Deposition, pp. 55-56). Finally, there were at least three occasions on which errors in her financial accounting methods were documented by IPS.   (Plaintiff's Answer to Defendant's Interrogatory No. 8(g); McDowell's Deposition, pp. 84, 87-88).

[*Id.*]  IPS does not address Ms. McDowell's specific contention that she was rated as "exceptional" in IPS's administrator performance evaluations; however, "self-serving statements in affidavits *without factual support in the record* carry no weight on summary judgment."  *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 925 (7th Cir. 2004) (emphasis in original) (citing *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 504 (7th Cir. 2004)).  Ms.

McDowell has not supported her claims of exceptional performance reviews, and her self-serving statement is refuted by her own admissions of performance deficiencies.

Even if Ms. McDowell had succeeded in demonstrating that she was meeting IPS's legitimate expectations and even if we assume that Ms. McDowell's termination of her administrative contract and demotion to teacher constitutes an adverse employment action, her claim fails at the third step of the analysis of her *prima facie* age discrimination claim – whether "similarly situated, *substantially* younger employees were treated more favorably" than Ms. McDowell.  *See Fleishman*, 698 F.3d at 609 (emphasis added). Though Ms. McDowell identified five principals and their respective genders, salaries, and races, each of whom received "higher salaries with less experience and some smaller schools with Assistant Principals," and are Caucasian and/or younger than she was at the time of the adverse employment action [McDowell Aff. at ¶ 21], she has not provided the actual ages of any of these principals.[7]  [*See id.* at ¶¶ 22-24 (providing additional examples of accounting incidents where "[y]ounger principals or administrators were not disciplined for such improprieties" but for whom Ms. McDowell failed to provide information as to their respective ages).]  "The Seventh Circuit has defined 'substantially younger' to mean at least ten years younger.  *Cavanaugh v. Oshkosh Corp.*, 787 F. Supp. 2d 860, 866 (E.D. Wis. 2011) (citing *Kariotis v. Navistar Int'l Transp. Corp.,* 131 F.3d 672, 676 n. 1 (7th Cir.

---

[7] Ms. McDowell cites to her "Exhibit 5" as examples of allegedly similarly situated principals whom IPS treated more favorably than she.  [*See* McDowell Aff. at ¶ 22-24.] Plaintiff's Exhibit 5 is simply a collection of her own employment contracts with IPS and does not reflect differing treatment accorded to younger principals.  [*See* Dkt. No. 41-5.]  A careful review of the record did not turn up any evidentiary support for Ms. McDowell's statements.

1997)).   Absent any information as to the ages of the allegedly similarly-situated employees, Ms. McDowell cannot establish that they were at least ten years her junior. Plaintiff's *prima facie* case of age discrimination thus fails as a matter of law.  *See Widmar*, 772 F.3d at 463 ("A prima facie case, however, must be established and not merely incanted, . . . .").

Furthermore, "to be similarly situated for comparison purposes, the other employee must be 'similarly situated with respect to performance, qualifications, and conduct.'" *Cavanaugh*, 787 F. Supp. 2d at 866.  Ms. McDowell provides none of these details regarding any of the administrators to whom she compares herself nor has she included any evidence or argument respecting their conduct, qualifications, or performance.  [*See* Dkt. No. 40 at 26; McDowell Aff.]  Ms. McDowell avers that "[a]nother principal, at the Julian Cullen Academy, had a problem with receipts not always being issued or recorded. This was a younger black female, and there was no reprimand or termination."  [McDowell Aff. at ¶ 23.]   Ms. McDowell invokes "Designation and Submission of Evidence in Opposition to Defendant's Motion for Summary Judgment at 'Exhibit 5'" in an attempt to substantiate these statements; however, as noted previously in footnote 6 to this order, Exhibit 5 is simply a collection of Ms. McDowell's contracts with IPS, not evidence of age-based disparate treatment.

The cases cited by Plaintiff in her Opposition Brief do little to bolster her claim of discrimination.  *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000) was a case tried to a jury in which a manager told the plaintiff he "was so old [he] must have come over on the Mayflower" and that he "was too damn old to do [his] job."  *Id.* at 151.

No similar evidence has been adduced here.  Confusingly, Plaintiff cites to *Horwitz v. Board of Education of AVOCA School District No. 37*, 260 F.3d 602 (7th Cir. 2001), which provides her claims absolutely no support.  Plaintiff herself describes the holding to foreclose relief because plaintiff "had not demonstrated that younger teachers were treated more favorably than she," causing the plaintiff's prima facie case of age discrimination to fail as a matter of law.  *Id.* at 611-12.  *O'Regan v. Arbitration Forums, Inc.*, 246 F.3d 975 (7th Cir. 2001), which Plaintiff also cites, supports IPS's arguments, not hers.  There, the court held that plaintiff's refusal to sign an employment agreement was insufficient evidence to establish a pretext for discrimination.  *Id.* at 984.  *Russell v. Board of Trustees of University of Illinois at Chicago*, 243 F.3d 336 (7th Cir. 2001) has no application here, since the Seventh Circuit decision included no discussion of the ADEA claim.  *See generally id.*, 341.  None of the cases Plaintiff cites are persuasive, never mind controlling here.  None supports a finding that Ms. McDowell has succeeded in establishing a *prima facie* case of discrimination against her by IPS on the basis of her age.

> **2.  IPS's Legitimate Non-Discriminatory Reason for the Adverse Employment Action.**

Although we have concluded that Ms. McDowell has failed to establish a *prima facie* case of age discrimination, even if she had, we hold that IPS has provided a legitimate non-discriminatory reason for the adverse employment action against her.  Ms. McDowell had to be reprimanded on numerous occasions for several different reasons – her relationships with staff, seeking personal financial support for her daughter from her staff, and accounting errors.  These legitimate and non-discriminatory reasons (poor job

performance) for the adverse employment action shift the burden to Ms. McDowell to prove that IPS's claims of poor job performance were a pretext for its age-based discrimination.

### 3. Plaintiff's Failure to Show that IPS's Justification Was a Pretext for Discrimination.

Ms. McDowell has not succeeded in her attempt to show that IPS's reason for terminating her administrative contract was a pretext for discriminatory termination. In fact, Ms. McDowell has not addressed this issue at all in her response brief. To prevail on a claim of pretext, Ms. McDowell must provide "evidence showing that the proffered reasons had no basis in fact, were insufficient to motivate discharge, or did not actually motivate h[er] discharge." *Widmar*, 772 F.3d at 465 (Plaintiff "must identify such weaknesses, implausibilities, inconsistencies, or contradictions in the defendant's proffered reasons that a reasonable person could find them unworthy of credence and hence infer that the defendant did not act for the asserted non-discriminatory reasons."). Ms. McDowell actually admitted to many of the accounting errors and reprimands she received from IPS. She provides no evidence that casts doubt on the honesty of IPS's motives for the adverse employment action. At most, Ms. McDowell relies on her own speculation that her demotion was a pretext for age discrimination which cannot assist her in avoiding summary judgment. *Id*.

For the foregoing reasons, we GRANT IPS's motion for summary judgment as to Plaintiff's ADEA claim.

### C. Retaliation.

Title VII makes it unlawful for an employer to retaliate against an employee who opposes unlawful discrimination.  42 U.S.C. § 2000e-3(a).  In order to survive summary judgment on her retaliation claim, Ms. McDowell must present evidence sufficient to raise a reasonable inference that: (1) she engaged in statutorily protected conduct; (2) she suffered an adverse employment action; and (3) there is a causal relationship between the protected expression and the adverse action.  *Reed v. Hunt Corp.*, No. IP01-1005-C-B/F, 2003 WL 1522943, at *5 (S.D. Ind. Mar. 20, 2003) (citing *Maarouf v. Walker Manufacturing Co.,* 210 F.3d 750, 755 (7th Cir. 2000); *Alexander v. Gerhardt Enterp. Inc.,* 40 F.3d 187, 195 (7th Cir.1994)).

The facts relating to Ms. McDowell's retaliation claim are straightforward.  Ms. McDowell claims:

> In early 2013, I complained to two of my supervisors, Paul Mikus and Joan Harrell about the discrepancy in my salary as compared to similarly situated caucasian [sic] and/or younger administrators.  This occurred in two separate meetings.  Joan was visibly irritated about this and I definitely noticed a change in her behavior toward me once I complained about the salary discrepancy.  Paul basically shut down in future interactions with me.  I believe my complaints led to my termination from the Principal/Administrator position.

[McDowell Aff. at ¶ 20.]  We assume, as does IPS for the purposes of its summary judgment motion, that Ms. McDowell can satisfy the first two elements of a *prima facie* case of retaliation – that Ms. McDowell's complaints to her supervisors in "early 2013" of a discrepancy between her salary as compared to "similarly situated Caucasian and/or younger administrators" [McDowell Aff. at ¶ 20] constitutes a statutorily protected activity; and that Ms. McDowell suffered an adverse employment action.  IPS's summary

judgment motion focuses on the third element – that a causal relationship exists between Ms. McDowell's protected expression and the adverse employment action.  We limit our discussion, therefore, to that argument.

The Seventh Circuit has set forth two ways for plaintiff to establish a *prima facie* case for unlawful retaliation to avoid summary judgment.

> The first way "is to present direct evidence (evidence that establishes without resort to inference from circumstantial evidence) that [plaintiff] engaged in protected activity (filing a charge of discrimination) and *as a result* suffered the adverse employment action of which he complains." *Id.* The second way requires that a plaintiff establish that, after filing a charge, the plaintiff was subjected to an adverse employment action *even though he was performing his job satisfactorily and no similarly situated employee who did not file a charge was subjected to the adverse employment action. Id.* Even where the plaintiff establishes all of the required elements to make out a prima facie case, if the employer presents unrebutted evidence of a non-invidious reason for the employment action at issue, the employer is entitled to summary judgment unless there is a material issue of fact as to whether the employer's non-invidious reason is pretext for retaliation. *Id.*

*Hudson v. Chicago Transit Auth.*, 375 F.3d 552, 559-60 (7th Cir. 2004) (citing *Stone v. City of Indianapolis Pub. Util. Div.*, 281 F.3d 640, 644 (7th Cir. 2002)) (emphasis added). The legal framework for a retaliation claim shares many of the same elements as an ADEA claim, which gives rise to obvious similarities in our analysis of these claims.

Ms. McDowell has not presented direct evidence to prove that the adverse employment action she experienced was the result of her protected expression.  Further, Ms. McDowell has not shown that her protected activity was the "but-for" cause of the adverse employment action or that a causal relationship existed between the protected expression and the adverse action.  *See Chaib v.* Indiana, 744 F.3d 974, 987 (7th Cir. 2014) (holding that but-for causation "requires proof that the unlawful retaliation would not have

24

occurred in the absence of the alleged wrongful action or actions of the employer."). As a result, we infer that Ms. McDowell seeks to prove her retaliation claim through the indirect method, to wit, that after expressing her concern of discrimination, she suffered the adverse employment action, even though she was performing her job satisfactorily and no similarly situated employee who did not file a charge was subjected to the adverse employment action. Ms. McDowell's effort to make this showing falls well short of what is required.

As with her failure to show that she was performing her job satisfactorily in terms of her ADEA claim, Ms. McDowell has failed to establish that she was performing her job in a satisfactory manner so as to prove her retaliation claim. Likewise, Ms. McDowell has set forth no facts to demonstrate that similarly situated employees who did not make similar claims of discrimination were not subjected to termination and/or demotion. Indeed, as previously noted, Ms. McDowell did not address these elements in her brief in any fashion.

Even if Ms. McDowell had succeeded in her *prima facie* showing of retaliation, IPS has presented unrebutted evidence of a non-invidious reason for the adverse employment action at issue – namely, Ms. McDowell's poor performance history – and Ms. McDowell has not set forth any facts to suggest that IPS's non-invidious reason is actually a pretext for retaliation. Ms. McDowell's retaliation argument consists largely of her recitation of caselaw without linking those precedents to the facts of her case. She has been unable to create any genuine issues of material fact sufficient to defeat summary judgment. Indeed, Ms. McDowell's only fact-specific argument in support of her retaliation claim was as follows:

25

> As shown by the affidavit of Kamona McDowell, she complained to her
> supervisor that she was being underpaid in comparison to others because of
> her race and sex [not mentioning age at all]. She noticed a distinct change in
> behavior immediately thereafter, ultimately leading to the termination of her
> Principal/Administrator contract. Accordingly, Plaintiff believes that a
> disputed material fact exists with regard to whether the termination decision
> was in retaliation for Kamona's prior protest, and summary judgment should
> therefore be denied with regard to her retaliation claim on this ground.

[Dkt. No. 40 at 28-29.]  Ms. McDowell's inconsistent, indeed, bare bones assertions do not

suffice to avoid summary judgment.  Not only has she failed to set forth a *prima facie*

retaliation claim, she has also failed to establish a causal/but-for relationship between her

early 2013 communications with her superiors and her adverse employment action and has

not demonstrated that IPS's reason for her termination was a pretext for retaliation.

For the foregoing reasons, we GRANT IPS's motion for summary judgment as to

Plaintiff's claim of retaliation.

**E.     Pendent State Law Claim.**

Plaintiff's state law breach of contract claim at this point is the single, remaining

claim in her litigation.  Title 28 U.S.C. § 1367(c)(3) provides:  "The district courts may

decline to exercise supplemental jurisdiction over a claim under subsection (a) if – . . . (3)

the district court has dismissed all claims over which it has original jurisdiction[.]"  The

Seventh Circuit has held that "[w]hen all federal claims in a suit in federal court are

dismissed before trial, the presumption is that the court will relinquish federal jurisdiction

over any supplemental state-law claims."  *Al's Serv. Ctr. v. BP Prods. N. Am., Inc.,* 599

F.3d 720, 727 (7th Cir. 2010).  The presumption is rebuttable, "but it should not be lightly

abandoned, as it is based on a legitimate and substantial concern with minimizing federal

intrusion into areas of purely state law." *RWJ Mgmt. Co. v. BP Prods. N. Am., Inc.*, 672 F.3d 476, 479 (7th Cir. 2012) (citing *Khan,* 93 F.3d at 1366); *see also Huffman v. Hains,* 865 F.2d 920, 923 (7th Cir. 1989) ("[R]espect for the state's interest in applying its own law, along with the state court's greater expertise in applying state law, become paramount concerns.").

The parties did not address the merits of Ms. McDowell's state law claim for breach of contract in their summary judgment briefing.  We acknowledge that the State of Indiana has a strong and obvious interest in applying its own law and adjudicating cases involving state law.  Ms. McDowell originally filed this cause of action in the Marion Superior Court and did not object to IPS's motion that we decline to exercise pendent jurisdiction over her state law breach of contract claim in the event her federal claims are dismissed.  We grant IPS's request and REMAND to state court Plaintiff's breach of contract claim.

## Conclusion

For all the reasons explicated above, we GRANT summary judgment in favor of Defendant IPS on Plaintiff Kamona McDowell's claims under Count I, II, IV, V, and VII of her Amended Complaint.  We REMAND Plaintiff's breach of contract claim brought in Count III of her Amended Complaint to the Marion Superior Court.  Final judgment shall enter accordingly.

Date:   _11/12/2015_

_Sarah Evans Barker_
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Andrea Lynn Ciobanu
CIOBANU LAW, PC
aciobanu@ciobanulaw.com

Andrew P. Wirick
HUME SMITH GEDDES GREEN & SIMMONS
awirick@humesmith.com

Caren L. Pollack
POLLACK LAW FIRM, P.C.
cpollack@pollacklawpc.com